IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JAMES T. WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-312 (RDA/WEF) |
| | ) | |
| MICHAEL S. REGAN,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Michael S. Regan's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") Plaintiff's *pro se* Second Amended Complaint. Dkt. 51. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion to Dismiss, together with Defendant's Memorandum in Support (Dkt. 52), Plaintiff's Opposition (Dkt. 56), Defendant's Reply (Dkt. 57), and Plaintiff's Surresponse (Dkt. 58), the Court GRANTS the Motion to Dismiss.

### I. BACKGROUND

#### A. Factual Background[2]

Plaintiff James T. Walker ("Plaintiff") was at one time employed as a Senior Environmental Scientist, and later, as a Physical Scientist in the Office of Research and

---

[1] Michael S. Regan, the Environmental Protection Agency's Administrator, is substituted for Andrew Wheeler under Federal Rule of Civil Procedure 25(d).

[2] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiff's Second Amended Complaint as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Development within the Environmental Protection Agency's ("EPA") National Center for Environmental Assessment ("NCEA"). Dkt. 50 at 2. Plaintiff is African American, is at least 70 years old,[3] has eye and mental disorders, and practices the Pentecostal religion. *Id*. at 3.

In his Second Amended Complaint, Plaintiff raises a litany of workplace grievances that occurred sometime between 2012 and 2017. *Id.* at 4. In particular, Plaintiff alleges that: (1) the NCEA changed "his job title and PD [Position Description]" from environmental scientist to physical scientist; (2) NCEA managers and human resources officials incorrectly processed a form used for his reassignment; (3) he was accused of plagiarism by NCEA managers; (4) he was "prevented from submitting two scientific manuscripts for publication in scientific journals"; (5) he was assigned duties "for which he did not have the specialized qualifications and skills to perform"; (6) he was placed on a 10-day suspension after telling a supervisor that he "could not understand him because of his Russian accent" and accusing another supervisor of sending him "nonsense"; and (7) he was subjected to a variety of other slights including supervisors and colleagues accusing him of being late, coming into his office, asking him to mute his phone, criticizing his work, and ignoring his complaints about an email he received that mentioned his vision disorder. *Id.* at 4-17.

Plaintiff alleges that, ultimately, on June 14, 2017, he was sent a Notice of Proposed Removal ("Removal Notice"), threatening to remove him from his position at the EPA in 30 days. *Id*. at 16. Plaintiff further asserts that, less than 30 days after receiving the Removal Notice and before any removal action was taken, on June 30, 2017, Plaintiff resigned from his position. *Id*. at 16-17.

---

[3] Plaintiff turned 70 at some point in 2017. Dkt. 50 at 3.

Plaintiff appears to allege that he was constructively discharged from the EPA in retaliation for prior EEO complaints that he filed and on account of his other protected statuses. With respect to his retaliatory constructive discharge claim, Plaintiff alleges that he engaged in protected activity by filing close to 30 EEO complaints since joining the EPA, though he only specifically identifies one EEO complaint that was allegedly filed in 2016.[4] *Id.* at 3.

And with respect to the discrimination that he purportedly faced, Plaintiff alleges that the EPA treated him differently than it "treated . . . similarly situated employees in the NCEA office who worked with Plaintiff [and] were white, females, Caucasian or Latinos, less than 40 years old, and had either no disabilities or disabilities different from . . . Plaintiff." *Id.* at 5. For example, Plaintiff claims that while his job title was changed, a supervisor "did not change the job titles and PDs of similarly situated employees in the NCEA-W Division who had the same PD title as Plaintiff . . . ." *Id.* at 5-6 (specifically naming Paul Schlosser and Amina Wilkins). Plaintiff also claims that one of his supervisors gave him a "leering-type" look and asked him not to work on a growth model, but that the supervisor "did not do the same to similarly situated employees . . . who were white, females, Caucasian, less than 40 years old, not of the Pentecostal religion and had either no disabilities or disabilities different from . . . [P]laintiff." *Id.* at 10-11. Plaintiff also alleges that he received "an unwelcomed and unsolicited email discussing [his] vision disorder." *Id.* at 16.

B. Procedural Background

Prior to filing suit in federal court, Plaintiff sought resolution of his claims before the EPA and the Equal Employment Opportunity Commission (the "EEOC"). Dkt. 50 at 3. Specifically,

---

[4] Plaintiff does not attach his 2016 EEO complaint to the Second Amended Complaint that he filed in this Court.

3

Plaintiff filed three EEO complaints in 2017, alleging that his managers and co-workers subjected him to discriminatory and retaliatory harassment at the EPA. *Id.* The EPA considered the three claims together and issued a Final Agency Decision ("FAD") on July 28, 2018, finding that Plaintiff failed to show that he was subjected to such harassment. *Id.* Plaintiff appealed the FAD to the EEOC, which affirmed the EPA's decision on October 28, 2019. *Id.*

Thereafter, Plaintiff initiated suit in the District Court for the District of Columbia by filing a Complaint on January 27, 2020. Dkt. 1. On May 22, 2020, Defendant filed an initial Motion to Dismiss for Improper Venue and for Failure to State a claim. Dkt. 4. On February 18, 2021, Judge Timothy J. Kelly ordered the case to be transferred for improper venue to the Eastern District of Virginia. Dkt. 13. On March 18, 2021, Defendant filed a second Motion to Dismiss in this Court. Dkt. 18. On March 30, 2022, this Court granted Plaintiff leave to amend his original Complaint, Dkt. 27, and Plaintiff filed his First Amended Complaint on May 31, 2022, Dkt. 28. On June 24, 2022, Defendant filed a third Motion to Dismiss. Dkt. 34. On February 27, 2023, Magistrate Judge William E. Fitzpatrick granted Plaintiff leave to amend and denied Defendant's third Motion to Dismiss as moot. Dkt. 49. Subsequently, on February 28, 2023, Plaintiff filed a Second Amended Complaint. Dkt. 50. On March 8, 2023, Defendant filed a fourth Motion to Dismiss, Dkt. 51, along with a Memorandum in Support, Dkt. 52. Then, on March 27, 2023, Plaintiff filed a Motion for Extension of Time to File a Response to Defendant's Motion to Dismiss ("Motion for Extension of Time"). Dkt. 54. Magistrate Judge Fitzpatrick granted Plaintiff's Motion for Extension of Time on March 30, 2023. Dkt. 55. On May 8, 2023, Plaintiff filed his Opposition

to Defendant's Motion, Dkt. 56, and on May 15, 2023, Defendant filed a Reply, Dkt. 57. On May 31, 2023, Plaintiff filed an unauthorized Surresponse. Dkt. 58.[5]

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp*., 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings.

---

[5] Pursuant to Local Civil Rule 7(F)(1), after a non-moving party files a brief in opposition to an opposing party's motion, the moving party may file a reply brief within six calendar days. E.D. Va. Loc. Civ. R. 7(F)(1). "No further briefs . . . may be filed without first obtaining leave of Court." *Id.* In the instant case, Plaintiff did not seek leave of Court prior to filing his Surresponse. However, in deference to Plaintiff's *pro se* status, the Court will consider the arguments raised in Plaintiff's unauthorized Surresponse in ruling on the instant Motion to Dismiss.

*Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

## III. ANALYSIS

In his Second Amended Complaint, Plaintiff raises a single claim for constructive discharge under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Rehabilitation Act,[6] alleging that he was forced out of the EPA as a result of alleged discrimination and based on his prior protected activity when he resigned from the EPA on June 30, 2017. Dkt. 50 at 19. While Plaintiff does not explicitly indicate whether he is asserting a theory of retaliatory or discriminatory constructive discharge, in the interest of construing his *pro se* allegations liberally, this Court will assume that he is bringing a constructive discharge claim under both theories.

### A. Constructive Discharge

To state a claim for constructive discharge, a plaintiff must meet a high standard. *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1133 (4th Cir. 1995). Specifically, he must show working conditions "so intolerable that a reasonable person in [his] position would have felt compelled to resign," and that "[he] actually resigned because of those conditions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211-12 (4th Cir. 2019).[7] Intolerable working

---

[6] Although Plaintiff does not cite to the ADEA or the Rehabilitation Act (whereas he does cite to Title VII), construing his Complaint liberally, the Court presumes that Plaintiff is attempting to proceed under those statutes, given his allegations of age and disability discrimination.

[7] Defendant claims that a constructive discharge claim requires a showing of "deliberateness." Dkt. 52 at 7. However, as Plaintiff correctly points out, Dkt. 56 at 6-7, "'deliberateness' is no longer a component of a constructive discharge claim," *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022).

conditions are not established "by showing merely that a reasonable person, confronted with the same choices as the employee, would have reviewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *McCormack v. Blue Ridge Behav. Healthcare*, 523 F. Supp. 3d 841, 851 (W.D. Va. 2021). Rather, "[i]ntolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted).

Furthermore, "[c]onstructive discharge may serve as the adverse employment action in a . . . retaliation claim." *Bailey v. Virginia Dep't of Alcoholic Beverage Control*, No. 2:18CV392, 2019 WL 123903, at *7 (E.D. Va. Jan. 7, 2019). Under such a retaliatory constructive discharge theory, a plaintiff must make out an actionable claim of retaliation and show the elements of a constructive discharge claim. *See Agbati v. Virginia Dep't of Agric. & Consumer Servs.*, 2022 WL 5101822, at *5 n.7 (E.D. Va. Oct. 4, 2022) (dismissing a retaliatory constructive discharge claim where the plaintiff, among other issues, failed to meet the "objective intolerability" standard for a constructive discharge claim and plead the causal link needed for a retaliation claim). Meanwhile, to state a claim for discriminatory constructive discharge, "a plaintiff must show 'that []he was discriminated against by h[is] employer to the point where a reasonable person in his position would have felt compelled to resign' and that []he actually resigned." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

In the instant case, Defendant contends that Plaintiff's constructive discharge claim—regardless of which theory it is brought under—cannot survive a motion to dismiss. Dkt. 52 at 1-2. Defendant asserts that Plaintiff's allegations regarding personality conflicts and

7

workplace slights fall far short of the objective intolerability standard. *Id.* at 11-12. In response, Plaintiff maintains that his allegations regarding "his supervisor's threat to remove him" and "his working conditions for the . . . 4-5 years" preceding his resignation are sufficient to make out a constructive discharge claim at this early stage of the litigation. Dkt. 56 at 4.

Considering the allegations in the Second Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has not plausibly established that his working conditions were so intolerable as to compel him to resign. Seeking to avoid this conclusion, Plaintiff first points to the fact that his job title changed from environmental scientist to physical scientist. Dkt. 56 at 12. This allegation is plainly inadequate to state a constructive discharge claim, however. As the Fourth Circuit has held, a demotion resulting in "a slight decrease in pay coupled with some loss of supervisory responsibilities" is insufficient to establish a constructive discharge. *Carter v. Ball*, 33 F.3d 450, 459-60 (4th Cir. 1994). Here, Plaintiff does not even allege that his new position came with lower pay or loss of any management duties. In fact, Plaintiff concedes that he was reassigned from one GS-14 position to another GS-14 position. Dkt. 50 at 11. As such, Plaintiff's allegations regarding his reassignment more closely resemble unactionable "[d]issatisfaction with work assignments" than complaints over a "career-ending" measure taken by an employer. *Carter*, 33 F.3d at 459. *See also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action.").

Plaintiff also avers that his employer "set him up to fail" by assigning him tasks that he did not have the qualifications or skills to perform. Dkt. 50 at 11-12. However, an employee is not "guaranteed a working environment free of stress," *Bristow*, 770 F.2d at 1255, and courts

8

have repeatedly found that being assigned a more challenging workload does not meet the objective intolerability standard, *see, e.g.*, *id.* (reversing district court judgment in favor of plaintiff on constructive discharge claim where plaintiff's job duties merely called for more effort than those of other managers); *High v. Wells Fargo Bank*, No. 3:21-cv-81, 2023 WL 2505540, at *12 (E.D. Va. Mar. 14, 2023) (dismissing a constructive discharge claim based on an employee's complaints of increased workload).

Plaintiff's allegation about an email that he received concerning his vision disorder once again fails to meet the high standard of objective intolerability. Dkt. 50 at 16. Critically, Plaintiff fails to allege the content of that email, and this Court will not engage in guesswork as to what about the email might have been inappropriate.

Plaintiff's other workplace grievances, such as his managers submitting forms with incorrect information for his reassignment, being accused of plagiarism and coming in late, his various spats with his supervisors, and not being permitted to publish certain scientific papers, likewise do not rise to the level of objective intolerability. *See, e.g.*, *Williams v. Giant Food, Inc.*, 370 F.3d 423, 424 (4th Cir. 2004) (being yelled at and chastised in front of customers is insufficient to establish a constructive discharge); *Carter*, 33 F.3d at 459 ("[A] feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."). Indeed, far from evincing that his employer created an objectively intolerable work environment for him, some of Plaintiff's allegations paint the picture that he at times engendered a combative relationship with his own supervisors that created further issues for him. *See* Dkt. 50 at 12-13 (alleging that Plaintiff was suspended after telling one supervisor that he "could not understand him because of his Russian accent" and accusing another supervisor of sending him "nonsense").

Finally, that Plaintiff was facing pending disciplinary action is "insufficient to amount to constructive discharge." *Zeh v. Truist Bank*, No. 1:20-cv-455, 2021 WL 1225984, at \*9 (E.D. Va. Mar. 31, 2021).[8] While Plaintiff may have been choosing between "comparably unpleasant alternatives—e.g., resignation or facing disciplinary charges—[that] does not of itself establish that a resignation was induced by duress or coercion." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988). Accordingly, because Plaintiff has failed to plausibly allege objectively intolerable working conditions, the Motion to Dismiss will be granted in this regard and his constructive discharge claim will be dismissed.

1. Retaliatory Constructive Discharge

Even if Plaintiff could clear the hurdle of showing that he was constructively discharged, he fails to plausibly allege the remaining elements of a retaliatory constructive discharge claim. To state a claim for retaliation, a plaintiff must plausibly allege "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)); *see also S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016) (same elements for Rehabilitation Act claim); *Krane v. Capital One Servs., Inc.*, 314 F.

---

[8] Contrary to Defendant's assertions in his Memorandum in Support, resignation in the face of a pending disciplinary action is not, "as a matter of law, fatal to [Plaintiff's] constructive discharge claim." Dkt. 52 at 9-10. The cases Defendant cites stand instead for the proposition that a pending disciplinary action itself is not sufficient to create a constructive discharge. *See, e.g.*, *Zeh v. Truist Bank*, No. 1:20-cv-455, 2021 WL 1225984, at \*9 (E.D. Va. Mar. 31, 2021) ("[E]ven assuming that plaintiff is correct that he would have been terminated for failing to improve his performance on his PIP if he had not retired . . . that . . . would be insufficient to amount to constructive discharge."). In other words, an employee facing a disciplinary action may still be able to make out a constructive discharge claim by showing that he reasonably felt compelled to resign for other reasons. Here, however, Plaintiff has not done so.

Supp. 2d 589, 610 (E.D. Va. 2004) (same elements for ADEA retaliation claim). And as noted *supra*, a constructive discharge may constitute an adverse action for the purposes of a retaliation claim. *Bailey*, 2019 WL 123903, at *7. Here, Defendant contends that, in addition to failing to allege an adverse employment action in the form of a constructive discharge, Plaintiff does not plead any instance of protected activity with the requisite specificity or adequately plead the causal link necessary for a retaliation claim. Dkt. 52 at 8.

In his Second Amended Complaint, Plaintiff alleges a long and protracted history of filing EEO complaints, asserting that he has filed "close to 30 EEO complaints" since "1984." Dkt. 50 at 3. However, Plaintiff does not specify exactly which of those complaints he believes prompted the alleged reprisal against him, and the only specific instance he identifies is a complaint in "FY-2016," without any indication of the date on which that EEO complaint was filed.[9] This "lack of clarity" surrounding the dates on which Plaintiff filed his EEO complaints "would be troublesome in any complaint, but it is particularly problematic in the context of a retaliation claim, because the viability of the plaintiff's allegations depends on whether [he] has plausibly alleged a causal relationship between [his] protected activity and any adverse action" that resulted from that protected activity. *Guillen v. Esper*, No. 119CV1206LMBIDD, 2020 WL 3695007, at *1 (E.D. Va. July 13, 2020). In short, without a more precise timeframe,

---

[9] Plaintiff also argues in his Opposition that his meeting with the "NCEA's Office Director[,]" during which he "complain[ed] about [his supervisors'] harassment, discriminatory[,] and retaliatory conduct in trying to constructively discharge him from the EPA" constitutes an instance of protected activity. Dkt. 56 at 17; *see also* Dkt. 50 (alleging that "[o]n or about May 17, 2017, Mary Ross, NCEA's Deputy Director, was notified, but to no avail"). However, a conclusory assertion that Plaintiff complained of discriminatory conduct to a supervisor—without more (such as an identification of what conduct or statements Plaintiff believed were discriminatory)—does not sufficiently allege protected activity. *See Barnhill v. Garland*, 2022 WL 18585322, at *9 (E.D. Va. Oct. 19, 2022) ("Vague allegations . . . largely unrelated to specific discriminatory practices, do[] not support the inference that Plaintiff was engaging in protected activity.").

it is difficult for this Court "to tell whether that complaint could plausibly have any causal link to any subsequent adverse action." *Id.* at *13.

Furthermore, even assuming *arguendo* that a general reference to a calendar year is sufficient to plead the occurrence of protected activity, Plaintiff's allegations still fail to state a retaliation claim. The Fourth Circuit has instructed that where, as here, "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.*, 45 F.3d 299, 309 (4th Cir. 2006); *see also Storm v. Berryhill*, No. 1:17-CV-1183-LO-JFA, 2018 WL 4609934, at *4 (E.D. Va. Sept. 25, 2018) ("no inference of retaliation" where alleged adverse action already occurred prior to protected activity). In the instant case, the only instance of protected activity that Plaintiff specifies occurred in "FY-2016," but his own allegations assert "that during the time interval between FY-2012 and FY-2017" he was subject to retaliatory conduct. Dkt. 50 at 3-4. As such, Plaintiff's theory of causation fails because he alleges retaliatory adverse actions predating the lone identified instance of protected activity. Accordingly, Plaintiff does not adequately plead a constructive discharge claim under a retaliation theory and any such claim will be dismissed.

2. Discriminatory Constructive Discharge

Plaintiff's discriminatory constructive discharge claim fares no better. While a plaintiff in an employment discrimination lawsuit is not required to plead facts that constitute a *prima facie* case to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *McCleary-Evans v. Maryland Dep't of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015). The Court therefore "looks to the elements of a prima facie case but does not require proof of the elements, only plausibility." *Robinson v. Loudon Cty. Pub. Sch.*,

No. 1:16-CV-1604, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (alteration and quotation marks omitted). Accordingly, to state a claim for discriminatory constructive discharge, Plaintiff must plausibly allege that "(1) he was constructively discharged; (2) he was [part of a protected class]; (3) he was performing his job duties at a level that met [his employer]'s legitimate expectations at the time of his constructive discharge; and (4) he was treated more harshly than other similarly situated . . . employees." *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006).[10] Furthermore, "[t]o the extent [Plaintiff] seeks to establish the plausibility of discrimination by comparing himself to employees outside of the protected class[, he] is required to do more than make a general accusation that he 'was treated differently as a result of his race'" and "[a]t a minimum, he must identify the similarly situated employee and 'establish a plausible basis for believing [the employee was] actually similarly situated.'" *Robinson*, 2017 WL 3599639, at *4 (quoting *Coleman*, 626 F.3d at 190-91).

Here, Defendant concedes that Plaintiff has adequately alleged his membership in a protected class on the basis of his race (African-American), color (Black), age (at least 70 years old), disability (eye and mental disorders), and religion (Pentecostal). Dkt. 52 at 17 (citing Dkt. 50 at 3). Defendant argues, however, that in addition to failing to allege the elements of constructive discharge, Plaintiff has not sufficiently alleged that the comparators he relies on are similarly situated to him. *Id.* at 18. Having already found that Plaintiff has insufficiently

---

[10] This Court recognizes that "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim." *Hurst v. D.C.*, No. 15–1410, 2017 WL 908208. at *4, n. 5 (4th Cir. Mar. 7, 2017) (per curiam) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). However, where, as here, the plaintiff does offer a comparator, "the validity of" his claim "depends upon whether that comparator is indeed similarly situated." *Taylor v. Millennium Corp.*, No. 1:15-CV-1046, 2016 WL 927185, at *6 (E.D. Va. Mar. 4, 2016) (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010)).

alleged that he was constructively discharged, the Court will focus its analysis on the fourth element of a discriminatory constructive discharge claim.

In relying on comparators, a plaintiff is required to allege that he is "similar in all relevant respects to [his] comparator," meaning that they had the "same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citation omitted). In the instant case, Plaintiff merely "alleges that . . . Defendant treated differently similarly situated employees in the NCEA office who worked with Plaintiff [and] were white, females, Caucasian or Latinos, less than 40 years old, and had either no disabilities or disabilities different from the Plaintiff," without providing any further context specifying who those employees were and how they were similar to Plaintiff. Dkt. 50 at 5. And even where Plaintiff does identify specific employees as comparators, he fails to mention who their supervisors were. *Id.* at 6 (describing Paul Schlosser and Amina Wilkins as environmental scientists).[11]

---

[11] In his Opposition, Plaintiff appears to attempt to replead his discriminatory constructive discharge claim by providing more information about his comparators. *See* Dkt. 56 at 19 (asserting that Amina Wilkins is a Black female environmental scientist with unknown disabilities who is under forty-years-old; that Paul Schlosser is a White male environmental scientist with unknown disabilities; and that Cheryl Itkins is a white female environmental scientist under forty-years-old with unknown disabilities). However, those allegations appear nowhere in his Second Amended Complaint. *See generally* Dkt. 50 (not containing any allegations identifying Wilkins', Schlosser's, or Itkins' respective races let alone identifying Itkins as a comparator). While this Court has an obligation to construe a *pro se* complaint liberally, it need not consider the additional allegations in Plaintiff's Opposition. *See, e.g.*, *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("[Plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Regardless, even if Plaintiff could replead his claim in this manner, his Opposition still fails to mention who his comparators' supervisors were and whether his comparators had similarly

Moreover, Plaintiff's allegations highlight that he had a highly contentious relationship with his supervisors and that his employer took certain disciplinary actions against him in response to his criticisms of his supervisors. *See id.* at 12-13 (alleging that Plaintiff was suspended after telling one supervisor that he "could not understand him because of his Russian accent" and accusing another supervisor of sending him "nonsense"). Critically, the Second Amended Complaint is devoid of any allegations indicating whether his comparators also had combative relationships with their supervisors or engaged in other similar conduct. As such, Plaintiff's discriminatory constructive discharge claim fails on this ground as well and will be dismissed.

\*   \*   \*

Ultimately, this Court concludes that Plaintiff has failed to plausibly plead a constructive discharge claim under either a retaliation or discrimination theory, and dismissal of his constructive discharge claim is therefore appropriate.

In determining whether dismissal should be with or without prejudice, the Court considers that Plaintiff has filed three iterations of his Complaint and remains unable to plausibly state a claim for constructive discharge. *See Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) ("In the Eastern District of Virginia, an amendment may be considered futile where [p]laintiffs have previously had two full opportunities to plead their claim."). And it appears from the facts alleged in Plaintiff's Second Amended Complaint and those contained in his Opposition that further amendment would be futile. Accordingly, dismissal of the Second Amended Complaint will be with prejudice.

---

contentious relationships with their supervisors. Thus, these allegations would not save his claim and further amendment is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 51) is GRANTED; Plaintiff's Second Amended Complaint (Dkt. 50) is DISMISSED WITH PREJUDICE.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record for Defendant and to Plaintiff, who is proceeding *pro se*, at his last address on file. The Clerk is further directed to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
September 22, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge